Mr. Chief Justice ShaRKey
delivered the opinion of the court.
It seems that the Agricultural Bank was the holder of a promissory note made payable at the Planters Bank at Manchester, and transmitted it to the Commercial Bank of Manchester for collection. At its maturity the note was delivered by some of the officers of the Commercial Bank to a notary for demand and protest. He went to the Planters Bank on the last day of grace; and made demand between the hours of eleven and twelve o’clock., and on being refused payment, took the note away with him, and returned it to the Commercial Bank, and protested it for non-payment after the close of banking hours. The bank closed at two o’clock P. M., until which time debtors had a right to pay their notes. In consequence of this premature demand the indorsers were discharged, the holder of the note having failed on that ground in a suit against them. This suit is brought against the Commercial Bank to recover the amount of the note in consequence of alleged negligence in having the demand made.
In the case of Tiernan v. The Commercial Bank of Natchez, it was settled that a bank which receives a note for collection, and places it in the hands of a notary in time for demand and protest, is not liable for the neglect of the notary. That in undertaking to collect for others, a bank becomes an agent, and is bound to use only reasonable skill and ordinary diligence. That the notary selected by the bank becomes a sub-agent, for whose *599 negligence the agent is not responsible, if he has used reasonable diligence in his choice as to the skill and ability of the sub-agent. 7 How. 648. The present case is admitted to be like the one cited except in one particular, and that it is said is of such a character as to entitle the plaintiff to recover. The notary to whom the note was delivered, was a man of very dissipated habits. One witness stated that the notary, at the time the demand was made, was a man of very dissipated habits, and frequently drunk; the witness would not have trusted him to discharge such a duty except when sober. Another witness also stated that the notary was a man of intemperate habits, but a very competent officer when sober. He would have trusted him without hesitation to discharge such a duty when sober, but if the notary had been drinking, he would have hesitated about giving him the note unless he could himself have superintended his action. J. J. Hughes stated that he had frequently handed out notes at the counter of defendant to the same notary to demand and protest, and upon all such occasions the notary seemed to be sober, but the witness was not always present at the banking house to hand out notes; they were sometimes given out by the teller. It was also in proof that there was at the time this protest was made, a mayor of Yazoo city, the town in which these banks were situated, who was á temperate, steady man, but that the notary was best qualified for such duties when sober; and it was further in proof, that at the time when this protest was made, it was the general custom of notaries in this state to make demand as it was made by this notary. The question is, does this testimony vary the case from the precedent cited, and establish such negligence as to make the Commercial Bank liable?
The witnesses spoke of the notary’s general habits; there was no proof as to his condition when the note was delivered. Let it be admitted that the plaintiff made out a prima facie case by showing that this note was received by the defendant for collection, and that the indorsers were discharged and the debt lost for want of proper demand. It was then incumbent on the defendant to furnish an excuse. This it did prima facie, *600 according .to the principle of the case cited, by showing the delivery of the note to a notary in due time for a demand. Supposing the proof to have been introduced in this order, then the defendant stood exonerated. To rebut this prima facie excuse, the plaintiff introduces proof in general terms of the bad habits of the notary; but does it necessarily follow that the loss was a consequence of these bad habits'? Not at alb; for the notary may have been sober at the time, and the witnesses say he was competent when sober. Such proof then did not necessarily remove or rebut the defence; it was necessary that the plaintiff should have established the negligence more definitely by proof that the notary was drunk at the time, or that his habits were so universally intemperate as to disqualify him for the discharge of an official act. The court did instruct .the jury that if the notary was not a competent and faithful •person by reason of his intemperate habits when the note was delivered to him, then the defendant was liable; and we do not think that the court could have given’ the other charges asked according to law. The question of the notary’s drunkenness at the time he received the note, was one of fact for the jury, and the charge of the court was such as to bring it to their notice. It seems, moreover, that the defendant was in the habit of employing .this same notary in its own business, for so we must understand the testimony of Hughes, and it was not required to exert greater diligence for another. Tiernan v. Commercial Bank, 7 How. 648. We cannot agree that the onus was changed or shifted by this general proof of intemperate habits, as it is in cases of insanity, and that it was consequently necessary, after such proof, for the defendants to show that the notary was sober when the note was delivered. When a man is proven to be non compos mentis, the law presumes that he continues so, and hence the reason of the rule.
Judgment affirmed.